UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **KIRBY INGRAM,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) ) Case No.: 5:19-cv-00741-LCB |
| **LOUIS KUBIK,** *et al.*, | ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Plaintiff Kirby Ingram brought this case for injuries he allegedly suffered during a welfare check on October 22, 2017. (Doc. 26 at 2). Plaintiff claims that Defendant Louis Kubik slammed him against the ground outside his home, causing serious injuries to his neck. Before the Court are Defendants Dorning's, Turner's, and Kubik's Motions to Dismiss Plaintiff's Amended Complaint (Docs. 30, 32 & 34). For the reasons stated below, the Court finds Defendants motions are due to be granted.

### I. FACTUAL BACKGROUND

On October 22, 2017, Plaintiff, a veteran who suffers from Post-Traumatic Stress Disorder (PTSD), was in the throes of a mental health crisis and cut one of his wrists. (Doc. 26 at 2). Plaintiff's girlfriend called the VA suicide hotline, and two sheriff's deputies, Defendant Kubik among them, were dispatched to the scene. (*Id.*). The deputies searched him for weapons and confiscated the pocketknife he had used

1

to cut his wrist. (*Id.*). Although Plaintiff was now no longer suicidal, the deputies and Plaintiff's mother together tried to persuade him to let the deputies take him to a VA residential treatment program. (*Id.* at 3). Throughout this discussion, Plaintiff asked repeatedly whether he was under arrest, and repeatedly he was assured that he was not. (*Id.*). Plaintiff informed the officers that if they wanted to arrest him, he would cooperate. (*Id.*).

Plaintiff eventually concluded that the deputies were not going to leave and ran outside into a cotton field behind the house. (*Id.*). The deputies followed behind him. (*Id.*). Plaintiff soon stopped to let them catch up. (*Id.*). When they reached him, the deputies told Plaintiff that if he would go back to the house and refuse treatment from HEMSI, the local medical services, the deputies would leave. (*Id.*). Plaintiff then agreed to walk back with the deputies to speak with HEMSI. (*Id.*). On the walk back, Plaintiff again asked whether he was under arrest, emphasizing that if he was, they should say so, and he would go voluntarily. (*Id.* at 3–4). Plaintiff was once again assured he was not under arrest. (*Id.* at 4). As they approached the yard, Plaintiff called out to HEMSI that he would be refusing treatment. (*Id.*).

Suddenly, Defendant Kubik grabbed Plaintiff under his armpits, picked him up, and slammed him into the ground head-first, seriously injuring Plaintiff's neck. (*Id.*). HEMSI took Plaintiff by ambulance to the hospital, where a surgeon fused his C-3 and C-4 vertebrae and replaced his C-2 vetebra with a metal rod. (*Id.* at 5).

For his injuries, Plaintiff now seeks damages under § 1983 against Defendant Kubik for his alleged use of excessive force and allegedly illegal seizure in violation of the Fourth and Fourteenth Amendment, and against Defendant Blake Dorning, former Sheriff of Madison County, for allegedly "establish[ing] a custom and policy of tolerating misconduct by his officers." Plaintiff also seeks damages under Title II of the Americans with Disabilities Act (ADA) against current Sheriff Defendant Kevin Turner in his official capacity only, for allegedly failing to provide adequate accommodations for Plaintiff's disability during the welfare check.[1] (*Id.* at 11–12).

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a civil claim may be dismissed for failing "to state a claim upon which relief can be granted." While the complaint need not include "detailed factual allegations" to survive, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), it must offer more than "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] Plaintiff voluntarily dismissed his claim that Defendant Turner violated Section 504 of the Rehabilitation Act in his Reply Brief. (Doc. 42 at 2).

misconduct alleged." *Iqbal*, 556 U.S. at 678. When reviewing a motion to dismiss, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hunt v. Aimco Properties*, 814 F.3d 1213, 1221 (11th Cir. 2016). A party's vague recitation "of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Defendant Dorning's Motion to Dismiss (Doc. 30)

Defendant Dorning argues that Plaintiff has not stated a claim against him because he has not pled enough facts to satisfy the standards of supervisory liability under § 1983. (Doc. 31 at 4). Defendant Dorning also asserts qualified immunity. (*Id.* at 17).

"Supervisory officials cannot be held liable under § 1983 for unconstitutional acts by their subordinates based on respondeat-superior or vicarious-liability principles." *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 957 (11th Cir. 2019). A supervisor that does not personally participate in the alleged wrongdoing can be held liable under § 1983 only "if there is a 'causal connection' between [the] supervisor's actions and the alleged constitutional violation." *Id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

4

A causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone*, 326 F.3d at 1360 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). A connection can also be established "when a supervisor's 'custom or policy' . . . result[s] in deliberate indifference to constitutional rights." *Id.* A government office or official's "custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Likewise, "a policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id.* The standard for holding a supervisor personally liable for the conduct of his subordinate is "extremely rigorous." *Braddy v. Fla. Dept. of Labor and Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

Plaintiff claims that Defendant Dorning's "standard operating procedure" has been to ignore the alleged misconduct of his deputies and fail to investigate incidents of abuse. (Doc. 26 at 6). In support of his argument that this was Defendant Dorning's custom or policy, Plaintiff asserts that Dorning conducted "zero internal investigations of deputy misconduct and zero disciplinary actions against deputies for misconduct." (Doc. 40 at 11). He also specifically lists five incidents from the

5

Northern District of Alabama in which Defendant Dorning allegedly oversaw deputy misconduct and did not intervene.[2]

Here, Plaintiff's allegations against Defendant Dorning do not meet the "rigorous standards" to hold him liable as a supervisor for Kubik's conduct. *See Braddy*, 133 F.3d at 802. Several of Plaintiff's allegations against Defendant Dorning, such as his alleged refusal to investigate past incidents of deputy misconduct and his alleged cover-up (Doc. 26 at 7–8), are mere conclusory allegations and must therefore be disregarded. *Iqbal*, 556 U.S. at 678. Although Plaintiff cited five instances of alleged misconduct by Defendant Dorning's deputies that led to out-of-court settlements, this does not equate to a "custom or policy" of indifference to constitutional violations. Assuming, *arguendo*, that each of these incidents was evidence of police misconduct, these five cases are not enough to establish that Defendant Dorning's custom or policy is to permit deputy misbehavior with no repercussions. These cases reference separate incidents that occurred respectively in 2008, 2009, 2010, 2012, and 2013. (Doc. 26 at 10). These occurrences at best indicate isolated events of alleged wrongdoing and do not suffice to indicate a "custom or policy" in the department. *See Depew v. City of St. Mary's*,

---

[2] These cases are: *Bryant v. Watson, et. al.*, (No. 5:14 -cv-00414-CLS); *Johnson v. Jones*, (No. 5:09-cv-01940-IPJ); *Ratliff v. Pyle, et. al.*, (No. 5:11-cv-03612-TMP); *Summers v. Martin*, (No. 5:12-cv-01816-CLS); and *Kennebrew v. Dejong, et.al.* (No. 5:15-cv-00372-CLS). (Doc. 26 at 9–10; Doc. 40 at 8).

*Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) (holding "random acts or isolated incidents" are typically insufficient to establish a custom or policy). Because Plaintiff failed to plausibly establish a causal connection between Defendant Dorning and alleged constitutional violations, a qualified immunity discussion is unnecessary.

Accordingly, considering the facts in the light most favorable to Plaintiff, Plaintiff has failed to state a claim against Defendant Dorning. Defendant Dorning's Motion to Dismiss the Amended Complaint (Doc. 30) is therefore due to be **GRANTED**.

**B. Defendant Turner's Motion to Dismiss (Doc. 32)**

Defendant Turner moves to dismiss Plaintiff's claims brought against him in the amended complaint for failing to state a claim under Title II of the ADA. (Doc. 32 at 1). Specifically, Defendant Turner contends that Plaintiff has failed to plausibly allege that Turner had any discriminatory intent towards him (Doc. 33 at 3); that Plaintiff cannot prove that he was discriminated against because of his disability (*Id.* at 11); and that Title II of the ADA does not apply to Fourth Amendment seizures (*Id.* at 15).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must demonstrate

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). Typically, a Title II claim would entitle a plaintiff only to injunctive relief. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). However, a plaintiff may recover compensatory damages under the statute if he can "prove that the entity that he has sued engaged in intentional discrimination," proof "which requires a showing of 'deliberate indifference.'" *Id.* (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)). Proving deliberate indifference is an "exacting standard" and requires proof that "the defendant knew that the harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Id.* (quoting *Liese*, 701 F.3d at 344).

"[T]o hold a government entity liable, the plaintiff must demonstrate that an 'official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf' had 'actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond." *Id.* (quoting *Gesber v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). In this

context, an official is one "whose actions can be fairly said to represent the actions of the organization." *Liese*, 701 F.3d at 350.

Here, Plaintiff has failed to state a claim against Defendant Turner in his official capacity.[3] Plaintiff contends that the correct standard of liability is respondeat superior. (Doc. 42 at 7). Indeed, Plaintiff correctly notes the availability of respondeat superior under Title II of the ADA "remains an open question" in the Eleventh Circuit. *Silberman,* 927 F.3d at 1134 n.6. However, until that question is resolved, the Court will follow the precedent established by *Liese* and apply the deliberate indifference standard for holding government entities liable for Title II violations.[4] Accordingly, to succeed under Title II of the ADA at this stage of litigation, Plaintiff must not only allege facts sufficient to state a claim under *Bircoll*, he must also allege that Turner was an official that was deliberately indifferent with "actual knowledge of discrimination in the [entity's] programs and fail[ed] to adequately respond." *Id*. at 1134.

Construing the facts in the light most favorable to Plaintiff, Plaintiff has failed to allege that Turner had any actual knowledge of discrimination against people with

---

[3] As Defendant Turner is being sued in his official capacity, "this is deemed a suit against the entity that he represents." Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999).

[4] The Court also notes that the Eleventh Circuit "has never addressed whether police officers can violate Title II of the ADA." Estate of Osorio v. Miami Dade Cty., 717 F. App'x 957 (11th Cir. 2018) (per curium). However, when confronted with this situation in *Estate of Osorio*, the Court applied the *Liese* "deliberate indifference" standard. *Id*.

disabilities in his department. Because Plaintiff failed to show actual knowledge of discrimination, he cannot show that Turner was deliberately indifferent to his disability, thus has failed to state a claim for relief. As there is no claim, it is unnecessary to address Defendant Turner's remaining arguments. Defendant Turner's Motion to Dismiss the Amended Complaint (Doc. 32) is therefore due to be **GRANTED**.

### C. Defendant Kubik's Motion to Dismiss (Doc. 34)

Defendant Kubik moves to dismiss the amended complaint on the grounds that he had probable cause to effect a mental health seizure and did not use excessive force towards Plaintiff. (Doc. 35 at 10, 13). Additionally, he argues he is entitled to qualified immunity. (*Id.* at 16).

Qualified immunity protects government officials "sued in their individual capacities" if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would know." *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002). To receive qualified immunity, a defendant must establish that he was acting within his discretionary authority. *Id.* at 1194. If a defendant successfully asserts he was acting within his discretionary authority, the burden shifts to the plaintiff "to show that qualified immunity is not appropriate." *Id*. Courts conduct a two-step analysis to determine if qualified immunity is appropriate. *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006). First, construing

10

the facts "in the light most favorable to the party asserting injury, do the facts show the officer's conduct violated a constitutional right?" *Id*. If a party's constitutional rights were violated, the court then "determine[s] 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated clearly established federal law." *Id*. An officer is entitled to qualified immunity in excessive force cases "unless application of the standard would inevitably lead every reasonable officer [in a defendant's position] to conclude the force was unlawful." *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000). When determining whether qualified immunity applies, the Court has the discretion to decide whether a constitutional violation exists and if it is clearly established in either order. *Wate v. Kubler*, 839 F.3d 1012, 1019 (11th Cir. 2016).

   *1. Unlawful Seizure*

The Fourth Amendment guarantees freedom from unreasonable searches and seizures. U.S. Const. amend. IV. When a law enforcement agent "restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Generally, warrantless searches and seizures are prohibited. *Bates v. Harvey*, 518 F.3d 1233, 1243 (11th Cir. 2008). However, a warrantless seizure is allowed when exigent circumstances exist, such as when a suspect can potentially harm himself or others. *Id*. at 1244. For example, an officer may seize an individual to determine his or her mental state, consistent with the guarantees of the

Fourth Amendment, if he has "probable cause to believe the person is dangerous either to himself or to others." *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011).

Construing the facts in the light most favorable to Plaintiff, the Court finds that on October 22, 2017, Defendant Kubik had probable cause to seize Plaintiff. Defendant Kubik and his fellow deputy arrived at Plaintiff's home in response to his "mental health crisis." (Doc. 26 at 2). By the time they had arrived, Plaintiff had already cut his wrist with a pocketknife. (*Id.* at 2). And though he claimed he was no longer suicidal, (*Id.* at 2), his actions were unpredictable: Plaintiff tried three times to escape the deputies, and when he finally succeeded, he ran out back into a cotton field to be alone. (*Id.* at 3). Given Plaintiff's suicidal actions and his displays of erratic behavior, a reasonable officer could conclude that Plaintiff remained a danger to himself. Accordingly, Defendant Kubik had probable cause to seize Plaintiff. Because there was no constitutional violation, Defendant Kubik is entitled to qualified immunity for this claim.[5]

2. *Excessive Force*

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from excessive force in the course of an

---

[5] That Defendant Kubik was acting within his discretionary authority is undisputed for purposes of a qualified immunity analysis.

arrest." *Lee,* 284 F.3d at 1197. Courts have "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, the force that an officer uses must be reasonable. *Id*. at 394. Determining whether use of force is reasonable in a situation "must be judged from the prospective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* at 396. Typically, the Court will consider three factors to determine whether the use of force was objectively reasonable: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the officer or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

A constitutional right is clearly established if a law enforcement officer is "on notice that his conduct [is] clearly unlawful." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). There are three ways for a plaintiff to prove that his constitutional right was "clearly established." *Id*. First, a plaintiff can show "a materially similar case has already been decided." *Id*. (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)). When deciding whether cases are "materially similar" courts will "ask whether the factual scenario that the official faced is 'fairly distinguishable from the circumstances facing a government official' in a previous case." *Terrell*, 668 F.3d at 1256. Only the "binding decisions of the Supreme Court of the United States, the United States Court of Appeals, and the highest court of the

pertinent state" are controlling. *Wate*, 839 F.3d at 1018. Next, a plaintiff "can point to a 'broader, clearly established principle [that] should control the novel facts [of the] situation." *Id*. Finally, he can demonstrate the right was clearly established by showing that the officer's conduct "so obviously violates the constitution that prior case law is unnecessary." *Id*. Cases rarely arise under "[t]he second and third methods . . . generally known as 'obvious clarity' cases." *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017).

Plaintiff argues that Defendant Kubik's actions were obviously unconstitutional, relying on *Landsman v. City of Vero Beach*, 621 F. App'x 559 (11th Cir. 2015).[6] The Court in *Landsman* found "[t]here is a broad statement of principle ensconced in our case law that clearly establishes that the use of force against an arrestee who, *inter alia,* is not a threat, has not exhibited aggressive behavior, and has not actively resisted arrest is excessive." *Id.* at 563. However, while Plaintiff was not resisting when the seizure happened, a reasonable officer could interpret his behavior as threatening. Deputies arrived after Plaintiff threatened to kill himself, had already cut his wrist, and ran into a cotton field because law enforcement would not leave. (Doc. 26 at 2, 3). Accordingly, this broad principle does not apply in this case.

---

[6] The Court notes that the case cited by Plaintiff is persuasive, not binding, authority. *See* Ray v. McCullough Payne & Haan, LLC, 838 F.3d 1107, 1109 (11th Cir. 2016).

Plaintiff also presents many cases he claims are materially similar in which officers were not granted qualified immunity. (Doc. 41 at 14–16). However, while these cited cases[7] establish the general proposition that applying more than *de minimis* force is excessive when a suspect is not resisting or poses minimal threat to law enforcement, they are not materially similar to this case. Construing the facts in the most favorable light to Plaintiff here, Plaintiff eventually cooperated with the deputies, but previously threatened suicide, cut his wrist, and ran into a cotton field after deputies arrived. (Doc. 26 at 2–3). While Plaintiff was no longer suicidal and eventually cooperative, a reasonable officer in Defendant Kubik's position could find his behavior was unpredictable, and he posed a threat to the deputies and himself. This situation is "fairly distinguishable" and factually distinct from the cases Plaintiff presented. *Terrell*, 668 F.3d at 1256. Plaintiff has not adequately demonstrated his constitutional right was clearly established during the encounter, so Defendant Kubik was not "on notice that his conduct [was] clearly unlawful." *Id*.

---

[7] The cases Plaintiff cited in support of his position are: Scott v. City of Red Bay, Ala., 686 F. App'x 631 (11th Cir. 2017); Stephens v. DeGiovanni, 852 F.3d 1298 (11th Cir. 2017); West v. Davis, 767 F.3d 1063 (11th Cir. 2014); Saunders v. Duke, 766 F.3d 1262 (11th Cir. 2014); Fils v. City of Aventura, 647 F.3d 1272 (11th Cir. 2011); Payton v. City of Florence, Ala., 413 F. App'x 126 (11th Cir. 2011); Brown v. City of Huntsville, Ala., 608 F.3d 724 (11th Cir. 2010); Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009); Galvez v. Bruce, 552 F.3d 1238 (11th Cir. 2008); Reese v. Herbert, 527 F.3d 1253 (11th Cir. 2008); Walker v. City of Riviera Beach, 212 F. App'x 835 (11th Cir. 2006); Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002); Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002); Priester v. City of Riviera Beach, Fla., 208 F.3d 919 (11th Cir. 2000); Slicker v. Jackson, 215 F.3d 1225 (11th Cir. 2000); and Smith v. Mattox, 127 F.3d 1416 (11th Cir. 1997). Three of these cases, *Scott*, *Payton*, and *Walker* are unpublished. Therefore, they are not binding on this Court.

at 1255. As Plaintiff has not shown that his constitutional right was clearly established at the time of the seizure, there is no need to decide if his constitutional right was violated. Accordingly, Defendant Kubik is entitled to qualified immunity on this claim. Defendant Kubik's Motion to Dismiss the Amended Complaint (Doc. 34) is therefore due to be **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Defendants Dorning's, Turner's, and Kubik's Motions to Dismiss the Amended complaint (Docs. 30, 32 & 34) are due to be granted. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this March 12, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE